IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN GRADILLAS, ET AL.,<br><br>           Plaintiffs,<br><br>     v.<br><br>LINCOLN GENERAL INSURANCE CO., ET AL.,<br><br>           Defendants.                                    / | No. C 12-03697 CRB<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiffs Lillian and Chris Gradillas move for partial summary judgment based on their breach of contract claim. Plaintiffs argue that they are entitled to partial summary judgment because Defendant Lincoln General breached its duty to defend and its duty to indemnify. Though the parties make many preliminary and procedural arguments, there are two main questions for the Court to resolve: (1) was the bus in question a "substitute auto;" and (2) was the rape on the bus a covered "use" of the vehicle? Because the bus in question was a "substitute auto" and the rape on the bus was a covered "use" of the vehicle, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment.[1]

---

[1] Defendant has also filed a Motion for Sanctions under Rule 11, Section 1927, and the Court's inherent power, stemming from Plaintiffs' having initiated suit in state court identifying themselves as judgment creditors, when "this apparently was not true at the time of the filing." See Motion for Sanctions (dkt. 57) at 3. The Court finds that Motion suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), VACATES the hearing on that Motion currently set for December 14, 2012, and DENIES the Motion for the reasons set forth in Section A, below.

## I.    BACKGROUND

Plaintiffs brought suit in state court alleging that a sexual assault occurred on a party bus operated by Kenneth Nwadike, Jr.[2] ("Nwadike") dba America Bus Line ("ABL"). Carozza Decl. (dkt. 55) Ex. 2, at L000497-98. The case was removed to federal court. Not. of Removal (dkt. 1). After Defendants filed a motion to dismiss, the Court granted Plaintiffs leave to file an amended complaint. Order (dkt. 50). Plaintiffs' amended complaint alleged breach of contract and breach of implied covenant of good faith, and sought collection under California Insurance Code Section 11580. FAC (dkt. 52) ¶¶ 49-65.

The allegations, in relevant part, are as follows. On January 27, 2008, Lillian and Chris Gradillas and others were passengers on a bus operated by Nwadike. Carozza Decl. Ex. 2 at L000498. The bus driver, Rosales, had a history of violent criminal acts toward women. Id. When the bus stopped at a bar, Lillian Gradillas and another woman were denied entrance. Id. Rosales invited the two women to wait on the bus. Id. Once the women were on the bus and Rosales had moved the bus to a dark parking lot across the street from the club, Rosales locked the only door to the bus. Id. When the other woman went to the bathroom, Rosales's nephew blocked her from exiting the bathroom while Rosales raped Lillian Gradillas. Id.

Nwadike notified his insurer, Lincoln General Insurance Company ("Lincoln"), of the state court suit. In the course of several letters, Lincoln claimed that Nwadike's policy did not cover the state court claims. First, on March 18, 2009, Lincoln sent a letter to Nwadike disclaiming coverage because the bus involved in the incident was not owned by the company or insured under the policy. Poore Decl. (dkt. 43) Ex. F, at L000406. Then, on May 27, 2009, Lincoln added that the coverage did not apply to abuse or molestation and that

---

[2] The parties' filings alternatively spell this individual's last name as Nwadiki and Nwadike. For consistency, the Court will refer to him as Nwadike.

2

new entities are excluded from coverage.[3] Id. at L000479. On July 6, 2009, Lincoln[4] sent Nwadike a letter in which it evaluated its duty to defend and duty to indemnify based on the allegations in the state court suit. Carozza Decl. Ex. 2 at L000500. Lincoln determined that it had no duty to defend or indemnify because the alleged rape qualified as a molestation under the policy. Id. at L000493. Therefore, Lincoln concluded that the incident was not an accident, and was specifically excluded from the insurance policy. Id. at L000501-02.

Nwadike had two insurance policies with Lincoln — a Business Auto Policy with a coverage limit of $5 million, Poore Decl. Ex. D, at L000042-43, and a Commercial General Liability policy with a limit of $1 million. Carozza Decl. Ex. 1, at L000002-03.

After Lincoln declined to defend or indemnify Nwadike, Plaintiffs and Nwadike stipulated to a judgment awarding Lillian Gradillas $2,000,000 and Chris Gradillas $500,000. Carozza Decl. Ex. 3, at 1-2.

Plaintiffs filed this motion for partial summary judgment based on their first cause of action, alleging that Lincoln breached its obligations under the Business Auto Policy contract. Mot. (dkt. 41) at 5.

## II. LEGAL STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment has the initial burden to show the absence of a genuine issue concerning any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 323-24. To discharge

---

[3] The abuse or molestation exclusion is not part of the auto insurance policy on which Plaintiffs' motion for partial summary judgment rests.

[4] The letter was actually sent by Ryan, Mercaldo & Worthington LLP, who was retained by Lincoln to analyze whether Lincoln had a duty to defend the lawsuit. Carozza Decl. Ex. 2, at L000493.

3

this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. See id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. DISCUSSION

### A. Validity of Plaintiffs' Judgment

Defendant argues that Plaintiffs' stipulated judgment is invalid and unenforceable. For a stipulated judgment to be enforceable against an insurer, "it must be (1) reasonable, (2) free from fraud, and (3) free from collusion." Carlson v. Century Surety, Co., No. 11-356, 2012 U.S. Dist. LEXIS 40986, at *21-22 (N.D. Cal. Mar. 26, 2012). Defendant argues that the stipulated judgment is unreasonable, fraudulent, and was formed through collusion.

#### 1. Plaintiffs' Judgment Was Reasonable

Defendant argues that the judgement is unreasonable. Opp'n (dkt. 55) at 15. Defendant offers no evidence in support of its allegations of unreasonableness, instead arguing that because the reasonableness is supported only by the stipulated judgment, the lack of other facts in the record create a dispute as to the reasonableness of the judgment. Id. Defendant offers no citation supporting this argument. Plaintiffs do not specifically address the reasonableness of the judgment. But, they do note that by signing off on the stipulated judgment, Judge Kahn made a determination that the $2.5 million stipulated judgment was reasonable. Reply (dkt. 61) at 12 (citing Carozza Decl. at Ex. 11).

Given that Defendant provides no authority for questioning the reasonableness of the judgment, and a state court judge implicitly found the judgment reasonable, the Court finds that the judgment was reasonable.

//

//

4

### 2. Plaintiffs' Judgment Was Not Fraudulent

It is undisputed that, at the time this federal action was brought, the stipulated judgment had not been entered in superior court. Opp'n at 4-5; Reply at 13. Because of this, Defendant argues that fraud makes the stipulated judgment invalid and unenforceable for four reasons: (a) Plaintiffs violated the notice requirement of California Civil Procedure Code Section 473(a)(1); (b) Plaintiffs did not establish that the stipulated judgment was not entered due to mistake, inadvertence, surprise or excusable neglect; (c) Plaintiffs' request for relief was not timely; and (d) the entry of judgment was premised on fraud.

#### a. Notice Requirement

First, Defendant argues that Plaintiffs violated the notice requirement of Section 473(a)(1), which requires notice to the adverse party, because Plaintiffs served notice on David Samuelsen while aware that Mr. Samuelsen was not counsel for Nwadike or ABL prior to Plaintiffs' *ex parte* motion to have judgment entered *nunc pro tunc*. Opp'n at 3, 6-8. According to Defendant, because Plaintiffs did not provide appropriate notice, and Plaintiffs indicated that the motion was not opposed by Nwadike or ABL, Plaintiffs committed fraud on the Court. Id. at 7.

In response, Plaintiffs argue that Samuelsen was Nwadike's attorney for the stipulated judgment and that even if notice was not proper, Nwadike would have supported it. Reply at 14-15. To support this argument, Plaintiffs submit a declaration by Nwadike[5] declaring his belief that Mr. Samuelsen represented him on the stipulated judgment and that he intended for the stipulated judgment to be filed with the state court. Nwadike Decl. (dkt. 61) Ex. D.

Because Nwadike and, in turn, ABL, would not have contested the propriety of the stipulated judgment, the Court finds that any lack of notice did not constitute fraud on the Court. See Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (Cal. 1996) (holding that "resulting damage" is a required element of fraud based on concealment).

---

[5] Defendant objects to consideration of this aspect of the Nwadike declaration as not having a proper foundation. Obj. (dkt. 63) at 4. But, the use of the term "this document" in Nwadike's statement that he had "no objection to this document being filed appropriately" clearly refers back to "the stipulated judgment" mentioned in the previous sentence. Id. Thus, the Court considers this declaration.

5

### b. Mistake, Inadvertence, Surprise, or Excusable Neglect

Second, Defendant argues that Plaintiffs did not establish mistake, inadvertence, surprise or excusable neglect as reasons for not entering the stipulated judgment before September 2012 as required by Section 473. Opp'n at 8-10; Cal. Civ. Proc. Code § 473(b). Defendant points to the lack of a declaration from Plaintiffs' co-counsels Horowitz, Poore, or Brown describing the circumstances surrounding the failure to submit the declaratory judgment. Id. at 9-10. Thus, Defendant claims that Plaintiffs' *ex parte* motion to enter the judgment *nunc pro tunc* was an unenforceable product of fraudulent concealment and is unenforceable. Id.

In response, Plaintiffs argue that, in granting an application for an order setting aside the dismissal and entering stipulated judgment, *nunc pro tunc*, Judge Kahn found that a mistake had been made. Reply at 14. Plaintiffs are correct that Judge Kahn's order found good cause to set aside the dismissal per Section 473(b) based upon "mistake or inadvertence." See Carroza Decl. at Ex. 11. Thus, the Court finds that there is no fraud because Plaintiffs failed to submit the filing due to mistake or inadvertence.

### c. Timeliness

Third, Defendant argues that relief was unavailable to Plaintiffs under Section 473 because Plaintiffs did not request relief within six months as required. Opp'n at 10-12; Cal. Civ. Proc. Code § 473(b). The stipulation of judgment was signed on August 2, 2011, but not entered with the Court until September 2012. Id. Further, Defendant claims that Plaintiffs were required to perform an inquiry on the judgment before filing the original suit in February 2012 as a judgment creditor and, by not doing so, are barred from relief under Section 473. Id.

Plaintiffs argue that the six-month period does not apply when the client did not give authority to dismiss the case without entry of the stipulated judgment. Reply at 14. In support of this position, Plaintiffs cite Whittier Union High Sch. Dist. v. Superior Court, which held that Section 473's time limitations did not apply to the vacation of an unauthorized dismissal. 66 Cal. App. 3d 504, 508 (1977). Here, Plaintiffs submitted a

6

declaration to Judge Kahn indicating that Mr. Golde did not have authority to dismiss without entering the stipulated judgment. See Reply at 14.

Accordingly, the Court finds that Section 473's time limitations do not bar Plaintiffs from seeking to enter the stipulated judgment.

### d. Entry of Judgment

Fourth, Defendant alleges that Plaintiffs' *ex parte* motion was premised on fraudulent conduct by Plaintiffs' attorneys and that the entry of judgment is a product of fraud. Id. at 12-14. Thus, Defendant claims that the judgment is invalid and unenforceable. Id. at 14-15.

In response to Defendant's allegations, Plaintiffs note that fraud and collusion are affirmative defenses that can be used to attack a stipulated judgment, but that such defenses require Defendant to produce substantial evidence. Reply at 11. Plaintiffs argue – accurately – that Defendant has supplied no evidence in support of its allegations of fraud and collusion. Id. at 12.

Second, Plaintiffs claim that their *ex parte* motion was appropriate and not barred by Section 473. Id. at 13-15. Plaintiffs argue that Golde, the attorney who erred in dismissing the case while failing to submit the stipulated judgment, was the only attorney required to submit a declaration and that this Court does not have authority to overturn the order issued by Judge Kahn. Id. at 14 n.1

Having found that Section 473 does not bar the stipulated judgment and that the judgment is not invalid or unenforceable, the Court finds that no fraud exists.

### 3. Plaintiffs' Judgment Was Not Collusive

Defendant does not specifically argue that the stipulated judgment was collusive, but does frame its arguments in terms of fraud and collusion. Opp'n at 5. Plaintiffs in reply also discuss both fraud and collusion. Reply at 12. Since Defendant's opposition leveled no specific charges of collusion, and there is no evidence in the record to indicate collusion, the Court finds the stipulated judgment valid and not collusive.

//

//

7

### B. Applicability of the Auto Policy

In addition to arguing that the stipulated judgment does not apply, Defendant argues that Plaintiffs did not establish that the Auto Policy covers the rape. Opp'n at 15.

As a preliminary matter, "the burden is on the insurer to prove a claim covered falls within an exclusion" and "on the insured initially to prove that an event is a claim within the scope of the basic coverage." Royal Globe Ins. Co. v. Whitaker, 181 Cal. App. 3d 532, 537 (1986) (citations omitted). Here, because the auto is not explicitly covered by the agreement and Plaintiffs claim that the auto is a substitute auto, the burden is on Plaintiffs to show that the auto is one covered by the plan. Poore Decl. (dkt. 51) at 34 ("We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership or use of a covered 'auto.'"). The burden is also on Plaintiffs to demonstrate that sexual assault is a "use" of the vehicle. Id.

#### 1. Evidence Considered

Defendant in both its opposition and in objections to submission of reply evidence argues that many of the exhibits and declarations submitted by Plaintiffs are improper and should not be considered by the Court. Opp'n at 19-20; Obj. to Reply Evid. Specifically, Defendant objects to the Court's consideration of (1) Nwadike's declaration; (2) Nwadike's supplemental declaration; and (3) photographs of the interior of the bus. Opp'n at 19-20; Obj. to Reply Evid.

##### a. Nwadike's Declaration

Defendant attacks Nwadike's declaration as improper because it was not dated, not authenticated by Plaintiffs' counsel, and contains conclusions and arguments. Opp'n at 19-20. In reply, Plaintiffs claim that Nwadike's declaration, as amended, is admissible and conforms with all rules and requirements because it was corrected to include a date and a final version, instead of the draft version previously submitted. Reply at 10-11.

The Court will consider the declaration because it contains factual material and because Plaintiffs corrected any errors by way of the amended version.

8

### b. Nwadike's Supplemental Declaration

Defendant objects to the Nwadike supplemental declaration as untimely because it was filed with Plaintiffs' reply and dated after the filing of the initial motion for partial summary judgment, and because it contains conclusory statements and arguments. Obj. to Reply Evid. at 1-2.

Defendant relies on Wallace v. Countrywide Home Loans, Inc., where a court refused to admit evidence first filed as part of a reply. Id.; No. 08-1463, 2009 U.S. Dist. LEXIS 110140, *18-19 (C.D. Cal. Nov. 23, 2009). In contrast, Plaintiffs argue that the moving party can submit additional evidence in support of their motion if the opposing papers raise new facts or material issues. Resp. at 1; Litton Indus. Inc. v. Lehman Bros., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), rev'd on other grounds, 967 F.2d 742 (2nd Cir. 1992).

Defendant's arguments were primarily against the form of the original Nwadike declaration, not the substance. Opp'n at 19-20. The supplemental declaration corrected any problems as to form. See Nwadike Supp. Decl. To the extent that new information was added, it was done in response to arguments that Defendant raised in its opposition. See Reply at 8-11. Additionally, to the extent that Nwadike's supplemental declaration contains conclusory statements or arguments, the Court will ignore them and consider only the factual assertions contained in the declaration. Finally, the Court finds that the declaration contains sufficient foundation and is based upon personal knowledge. See Bartheley v. Air Lines Pilot Assn., 897 F.2d 999, 1018 (9th Cir. 1990) (holding that a declarant's position and the nature of his/her participation can establish personal knowledge and competence to testify).

### c. Photographs of the Interior of the Bus and Information About VIP Club Bus

Defendant contends that photographs of the interior of the bus lack foundation because it is not clear that the photographs are of the bus in which the rape occurred, and that information about the VIP Club Bus does not pertain to Defendant.

Because the photos in question were produced by Defendant in response to a discovery request for claim file materials pertaining to the loss, and Defendant admitted that

9

1  VIP Club Bus provided marketing services for Nwadike and ABL, both pieces of evidence
2  have sufficient foundation and the Court will consider them.

### 2. Duty to Defend

Liability insurance imposes on the insurance company: (1) a duty to defend claims and (2) a duty to indemnify its insured. Howard v. Am. Nat'l Fire Ins. Co., 187 Cal. App. 4th 498, 519 (2010). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993) (citing CNA Cas. of Cal. v. Seaboard Sur. Co., 176 Cal. App. 3d 598, 607 (1986)). "Facts merely tending to show that the claim is not covered, or may not be covered, but . . . insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales." Montrose Chem. Corp., 6 Cal. 4th at 300.

Here, Defendant claims that it had no duty to defend Nwadike and ABL for two reasons. First, Defendant claims that the bus in question was not a "substitute auto" under the policy. Opp'n at 18-19. Second, Defendant claims that the rape was not a "use" of the auto. Id. at 21-22. The Court notes that, if Defendant's claims are incorrect, and there was a duty to defend, Defendant is liable for the full amount of the underlying judgment. See Amato v. Mercury Cas. Co., 53 Cal. App. 4th 825, 831 (1997).

### a. Substitute Auto

The auto policy extends coverage to "[a]ny 'auto' you do not own while used with the permission of the owner as a temporary substitute for a covered 'auto' you own that is out of service because of its: (a) Breakdown; (b) Repair; (c) Servicing; (d) 'Loss'; or (e) Destruction." Poore Decl. Ex. E at L000050.

Defendant argues that Plaintiffs did not provide sufficient evidence to show that the auto was a substitute. Opp'n at 21-22. During oral argument, Defendant claimed that there were not sufficient facts in the record to demonstrate that the substitute vehicle's use was

temporary, and that there is a triable issue of fact as to how long the insured vehicles were out of use.

Plaintiffs argue both in briefing and at oral argument that statements made by Mr. Nwadike were sufficient to prove that the auto was being used as a substitute. Reply at 8-10. Plaintiffs offer two declarations in support of the auto qualifying as a substitute auto. First, Mr. Nwadike stated that

> On January 27, 2008, [ABL] had to use a temporary substitute vehicle to book the charter bus that was used by Plaintiff Lillian Gradillas and other female patrons. During the week-end [sic] of January 27, 2008, ABL had at least three of the 'listed' buses on our Lincoln General auto policy unavailable due to servicing, breakdown, maintenance, and repairs. As a result, we had to use a temporary substitute vehicle from another source on January 27, 2008. This temporary substitute vehicle was used with the permission of the owner.

Nwadike Decl. Ex. G ¶ 9. After Plaintiffs received Defendant's opposition, Mr. Nwadike submitted a second declaration stating that "[d]uring the week-end [sic] of January 27, 2008, when Ms. Gradillas was injured on one of [ABL's] buses, the three ABL buses were unavailable due to engine problems and transmission repairs. The engines were essentially non-operable at the time." Nwadike Supp. Decl. Ex. D ¶ 5.

California liberally construes substitute auto provisions.

> A clause extending coverage to a substitute automobile is for the insured's benefit; if any construction is necessary, it is to be construed liberally in favor of the insured. Its purpose is not to limit narrowly or defeat coverage, but to make the coverage reasonably definite as to the vehicle normally used, while permitting the insured to continue driving should that vehicle be temporarily out of commission.

State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co., 9 Cal. App. 3d 508, 518 (1970).

Defendant attacks Nwadike's statements that the buses were "unavailable due to engine problems and transmission repairs" and "essentially non-operable" not with contradictory evidence, but merely by alleging that Plaintiff did not carry their burden of establishing that the bus in question was a substitute auto. Opp'n at 23.

Nonetheless, the Court finds that Nwadike's statements are sufficient to satisfy Plaintiff's burden that the auto in question is a substitute auto under the policy. See Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993) ("To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the

11

1  absence of any such potential. In other words, the insured need only show that the
2  underlying claim may fall within policy coverage; the insurer must prove it cannot.").

### b. Use of the Auto

Defendant next argues that Plaintiffs' injury did not arise out of the "use" of the auto. Opp'n at 16. In support of this argument, Defendant first argues that Plaintiffs waived the argument that the auto policy applied. Id. at 17.[6] Additionally, Defendant argues that claims for sexual assault and rape do not fall under "use" of an automobile according to California law. Id. at 18.

In response, Plaintiffs first argue that Defendant admitted that the rape occurred during the use of the auto when they denied coverage to ABL and Nwadike. Reply at 2. Additionally, Plaintiffs argue that the auto was in "use" when the rape occurred. Id. at 3-8.

The California Supreme Court has discussed the word "use" in insurance contracts. See State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 100 n.7 (1973) (citing multiple cases). It has held that "use" does not require proximate causation. Id. Instead, what is necessary is a "minimum causal connection" where the events "arise out of" and are "related to" the vehicle's use. Id.

The main thrust of Defendant's argument is that rape and sexual assault are not "uses" of an automobile. Opp'n at 16-18. In support of this position, Defendant cites American National Property & Casualty Co. v. Julie R., where the court held that an auto insurance policy did not cover the sexual assault of a woman in an automobile. 76 Cal. App. 4th 134, 143-44 (1999). There, a passenger in a BMW was sexually assaulted after the driver pulled the car to the side of the highway, with the passenger side of the car next to a chain link fence. Id. at 137. The driver left the car to relieve himself and made sexual advances towards the passenger when he returned. Id. The passenger tried to open the door, the window, and kick out the windshield, but was unable to do so because the door was locked, she couldn't find the window control panel, and the car seat was too far away for her to kick the windshield. Id. Because the court did not find that the use of the vehicle was a

---

[6] The Court rejects the waiver argument as unfounded.

12

1  "predominating cause or substantial factor" in the passenger's injury, and the car was only
2  the situs of the injury, the court found that the automobile policy did not cover the injury. Id.
3  at 145.

4  Plaintiffs argue that California law finds use if the vehicle is the situs of the injury and
5  the vehicle's design contributed to the injury. Reply at 4. In support of this argument,
6  Plaintiffs cite several cases, of which one is most relevant. See Nat'l Indem. Co. v. Farmers
7  Home Mut. Ins. Co., 95 Cal. App. 3d 102, 109-11 (1979) (finding "use" where a child
8  opened a car door and ran into the street because "[t]he conduct of the insured which
9  contributed to the injury simply cannot be dissociated from the use of the vehicle"); Nat'l
10  Am. Ins. Co. v. Coburn, 209 Cal. App. 3d 914, 920-21 (1989) (finding an emergency brake
11  coming loose while children played around a parked van was "use"); United Servs. Auto.
12  Ass'n v. U.S. Fire Ins. Co., 36 Cal. App. 3d 765, 771 (1973) ("while the activity involving
13  the vehicle was peripheral it was not an activity wholly dissociated from, independent or and
14  remote from its use"); State Farm Fire & Cas. Co v. Camara, 63 Cal. App. 3d 48, 54-55
15  (1976) (finding "use" when an injury was caused by vehicle modifications).

16  In Prince v. United National Insurance Co., two children died when left alone in a
17  vehicle for more than six hours. 142 Cal. App. 4th 233, 235 (2006). There, the court
18  interpreted other cases as not requiring that a vehicle "be moving or even running for injuries
19  to arise out of its use." Id. at 240. Noting that the type of injury from which the children
20  suffered was particularly likely to happen in a motor vehicle, the court found that the
21  insurance policy applied. Id. at 244-45.[7]

22  Prince also questioned the predominance requirement employed by the majority in
23  Julie R., and seemed to embrace the Julie R. dissent's view that only a minimal causal
24  connection was required. Id. at 244 (discussing "thoughtful dissent"). Though Prince did not
25  change the standard of review (it found that the result would be the same "[w]hether the test

---

27  [7] Admittedly, that court stated that "[u]nlike rape and assault, which can happen anywhere, the type of rapid onset hyperthermia suffered by the children is particularly likely to occur in a motor
28  vehicle." Id. at 244. As discussed below, the Court finds that while rape and assault could perhaps happen anywhere, they were more likely to occur in the party bus used here.

13

1  to be applied is predominating cause/substantial factor or minimal causal connection"), id., it
2  is an unsettled question of California law which test applies. Under either test, Plaintiffs here
3  prevail.

4      At oral argument, Defendant emphasized that "[m]ere use of a vehicle in some way
5  connected to the events giving rise to the injury is insufficient to establish coverage." Am.
6  Nat. Prop. & Cas. Co., 76 Cal. App. 4th at 139. But this was not a case where "the mere
7  circumstance [was] that a vehicle [was] used to transport someone to the site where an injury
8  occurs." See id. at 147 (Epstein, J., dissenting). Gradillas was a customer on the bus
9  operated by ABL and Nwadike. Carozza Decl., Ex. 2. at L000498. The bus was designed
10 for social activity to occur on it, and promoted a party atmosphere. The pictures of the bus
11 show long padded benches, at least two bar areas, glasses, and bottles for storing alcohol.
12 See Poore Supp. Decl. Ex. B. VIP Club Bus advertised the bus as "California's Favorite
13 Nightclub Party Bus!," referenced "drinks served onboard," and stated that "the party
14 continues on the bus." Id. Ex. C.[8] The bus was not intended solely for transportation, as is a
15 typical automobile. See id. at Ex. A-B.

16     Moreover, the manner of operating the vehicle directly contributed to the assault here.
17 Although the bus was not transporting Ms. Gradillas when the rape occurred, it was still
18 being used for its party atmosphere, and features of the vehicle aided in the commission of
19 the rape. See id.; Carozza Decl., Ex. 2. at L000498. The driver, Rosales, locked the only
20 exit to the bus (most vehicles have more than one exit). Id. And Rosales's nephew blocked
21 the other woman on the bus in the bathroom (most vehicles do not have bathrooms, or serve
22 beverages making it more likely that a bathroom will be used). Id. "The conduct of the
23 insured which contributed to the injury simply cannot be dissociated from the use of the
24 vehicle" here. Nat'l Indem. Co., 95 Cal. App. 3d at 109-11.

25     The Court therefore finds that the rape did arise out of the "use" of the auto.
26 //
27
28     [8] It also mentioned the avoidance of DUIs by taking the bus, and "sober[ing] up" on the ride home, reflecting an awareness that passengers would be inebriated. Id.

14

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

Dated: December 3, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE